IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
**MOHABAT KHAN,**                                )
Guantánamo Bay Naval Station,               )
Guantánamo Bay, Cuba                           )        PETITION FOR WRIT
              Petitioner,                         )        OF HABEAS CORPUS
                                                              )
     v.                                              )
                                                              )        No: 05-cv-01010-RJL
**GEORGE W. BUSH**                            )
     President of the United States          )
     The White House                            )        JUDGE RICHARD J. LEON
     1600 Pennsylvania Avenue, N.W.   )
     Washington, D.C. 20500;                )
                                                              )
**DONALD RUMSFELD**                      )
     Secretary, United States                  )
     Department of Defense                    )
     1000 Defense Pentagon                   )
     Washington, D.C. 20301;                )
                                                              )
**ARMY BRIG. GEN. JAY HOOD**       )
     Commander, Joint Task Force - GTMO   )
     JTF-GTMO                                    )
     APO AE 09360; and                       )
                                                              )
**ARMY COL. MIKE BUMGARNER**   )
     Commander, Joint Detention            )
     Operations Group, JTF - GTMO       )
     JTF-GTMO                                    )
     APO AE 09360                             )
           Respondents.                 )
_____)

## CIVIL COMPLAINT & FIRST AMENDED PETITION
## FOR WRIT OF HABEAS CORPUS

     Petitioner seeks relief under the Great Writ and the laws of the United States.  Petitioner

is a citizen of Afghanistan, who filed a pro se request for habeas corpus relief with this Court,

which was docketed on May 19, 2005.  Petitioner is a civilian who the President of the United

States has wrongly classified as an "enemy combatant."  Respondents are detaining Petitioner

virtually incommunicado in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo Bay"). Respondents are detaining Petitioner without lawful basis, without charge, without access to counsel, and without affording him any fair process by which he might challenge his detention. Respondents are holding Petitioner under color and authority of the executive branch, in violation of the Constitution, laws and treaties of the United States, and in violation of customary international law and fundamental principles of human rights. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner or to establish in this Court a lawful basis for his detention. This Court should also order injunctive and declaratory relief.

## I. JURISDICTION

1.     Petitioner brings this action under 28 U.S.C. §§ 2241(a), (c)(1), (c)(3) and 2242. Respondents are detaining Petitioner "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (c)(3). Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 701 *et seq*.; and Articles I and II and the Fifth, Sixth, and Eighth Amendments of the United States Constitution. Because he seeks declaratory relief, Petitioner also relies on Federal Rule of Civil Procedure 57.

2.     This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein under 28 U.S.C. § 2201; to effectuate and enforce declaratory relief by all necessary and proper means under 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction; and to issue all writs necessary or appropriate in aid of the Court's jurisdiction under 28 U.S.C. § 1651.

## II. PARTIES

3.      Petitioner, Mohabat Khan**,** is presently incarcerated at Guantánamo Bay, and held in Respondents' unlawful custody and control.  He is believed to be a citizen of Afghanistan.

4.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the armed forces of the United States.  Respondents are detaining Petitioner pursuant to President Bush's authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the Executive Order.  President Bush is responsible for Petitioner's unlawful detention and is sued in his official capacity.

5.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to either the Executive Order or the President's authority as Commander-in-Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining custody and control over Petitioner, and is responsible for doing so. He is sued in his official capacity.

6.      Respondent Brigadier General Jay Hood is the Commander of Joint Task Force-GTMO, the task force that has control of the detention operation at Guantánamo Bay.  He has supervisory responsibility for Petitioner and is sued in his official capacity.

7.      Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the United States facility where Respondents are currently holding Petitioner.  He is the immediate custodian responsible for Petitioner's detention and is sued in his official capacity.

8.      Respondents are directly responsible for any activities undertaken by, or under the supervision of, any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo Bay.  All references to Respondents' actions in this Petition include activities performed by Respondents'

3

agents or employees, other agents or employees of the United States government ("United States" or "government"), or contractor employees.

### III.  STATEMENT OF FACTS

#### A.  The Petitioner

9.      Petitioner is not, and never was, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition the United States has adopted in any civil or military proceedings.  Upon information and belief, Petitioner is not, and never has been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there."  Hamdi v. Rumsfeld, 542 U.S. 507, 124 S. Ct. 2633, 2639 (2004).

10.      Petitioner did not take up arms against United States forces, and did not support forces hostile to the United States or engage in armed conflict with the United States. Nevertheless, Petitioner was taken to Guantánamo Bay.

11.      Petitioner seeks to enforce his right to a judicial determination of the lawfulness of his detention by an appropriate and lawful authority.  He also seeks a factual basis for Respondents' determination that he is either an "enemy combatant" as defined by the Supreme Court in Hamdi or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

12.      The United States has not shown that Petitioner was a member of the Taliban, of the armed forces of Afghanistan, or of Al Qaeda prior to his detention.  Nor has it shown that Petitioner committed any violent acts against any American person or property.  Furthermore, the United States has failed to show that Petitioner had any involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, in the ensuing armed conflict, or in any acts of international terrorism that the United States attributes to Al Qaeda or to any other terrorist group.  Petitioner remains incarcerated at Guantánamo Bay, a territory over which the United States exercises exclusive jurisdiction and control.

13.    Petitioner has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the United States Constitution, the laws and treaties of the United States, or customary international law.

14.    Upon information and belief, Petitioner Mohabat Khan desires to pursue in the United States courts every available legal challenge to the lawfulness of his detention.

**B.  The Joint Resolution**

15.    In the wake of the September 11, 2001, attacks, the United States, at the direction of President Bush, began a military campaign in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force ("Joint Resolution"), Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001).

16.    Petitioner is not properly detained pursuant to President Bush's authority as Commander-in-Chief, the laws and usages of war, or the Joint Resolution.

17.    Petitioner is not, and never was, a member of Al Qaeda or any other terrorist group.  Prior to his detention, he did not commit or espouse any violent act against any American person or property.  He did not participate in the armed conflict in Afghanistan and he had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism that the United States attributes to Al Qaeda or any other terrorist group.  Because Petitioner did not participate in the armed conflict at any point in time, he is not properly subject to President Bush's authority as Commander-in-Chief, the laws and usages of war, or to the detention order that President Bush issued.

**C.  The Executive Order**

18.    On November 13, 2001, President Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone President Bush has "reason to believe":

5

i.    is or was a member of the organization known as al Qaida;

ii.   has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

iii.  has knowingly harbored one or more individuals described in subparagraphs (i) and (ii) . . . .

See Executive Order, supra, § 2.  Congress neither authorized nor directed the Executive Order, and the Executive Order is beyond the scope of the Joint Resolution.

19.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of President Bush's discretion.  The Executive Order contains no notification provision for informing a detainee of the charges he may face.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law; nor does it provide the right to counsel, the right to notice of consular protection, or the right to consular access at the detainee's request.  It provides no recourse to a neutral tribunal to review the basis for or the legality of a detainee's continued detention, and contains no provision for recourse to an Article III court.  In fact, the Executive Order purports expressly to bar review by any court.  See Executive Order, supra, § 6(b)(2) ("the individual shall not be privileged to seek any remedy or maintain any proceeding . . . in any court of the United States, or any state thereof").  In sum, the Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms—a determination which, because it is not reviewable by any court, may be based on false evidence, evidence obtained through torture, or even no evidence at all.

20.    The Executive Order was promulgated in the United States and in this judicial district.  The decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district.  The decision to detain Petitioner at Guantánamo Bay was made in

6

the United States and in this judicial district.  The decision to continue detaining Petitioner was made, and is being made, by Respondents in the United States and in this judicial district.

21.     Petitioner is not subject to the Executive Order.

22.     Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, or the laws and usages of war, in that Petitioner has been denied the process due to him under, among other things, the common law and the Due Process Clause of the Fifth Amendment to the United States Constitution, domestic civil and military law, and international law.

### D.  Guantánamo Bay

23.     On or about January 11, 2002, the United States military began transporting prisoners to Camp X-Ray at Guantánamo Bay.  In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo Bay.  Currently, prisoners are housed in Camp Delta, Camp V, an additional maximum-security interrogation and detention center.

24.     Prisoners incarcerated at Guantánamo Bay are entitled to test the legality of their detention in the federal courts.  See Rasul v. Bush, 542 U.S. 466, 124 S. Ct. 2686, 2698 (2004).

25.     On a date unknown to counsel for Petitioner, but known to Respondents, the United States transferred Petitioner to Guantánamo Bay, where, upon information and belief, he currently resides in Respondents' custody and control.

### E.  The Conditions of Detention at Guantánamo Bay

26.     Respondents have held Petitioner at Guantánamo Bay virtually incommunicado.

27.     Upon information and belief, Petitioner Khan has been or will be interrogated repeatedly by agents of the United States Department of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not ben notified of any pending or contemplated charges.  He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact or secure counsel.

He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Khan should not be informed of these rights. As a result, Petitioner Khan lacks any ability to protect or to vindicate his rights under domestic and international law.

28.     Upon information and belief, Respondents have forced, or will force, Petitioner to provide involuntary statements to Respondents' agents at Guantánamo Bay.

29.     Upon information and belief, the United States has held detainees at Guantánamo Bay under conditions that violate their constitutional and international rights to dignity and freedom from torture, and from cruel, inhuman, and degrading treatment or punishment.[1]

30.     Many of these violations—including isolation for up to 30 days, 28-hour

---

[1] See, e.g., Amnesty International, Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power (hereinafter, "Guantánamo and Beyond"), at 830-115, Ch. 12-13, AMR 51/063/2005 (May 13, 2005), available at http://web.amnesty.org/library/Index/ ENGAMR510632005 (last visited Nov. 29, 2005); Physicians for Human Rights, Break Them Down: Systematic Use of Psychological Torture by US Forces, Ch. 3 (2005), available at http://www.phrusa.org/research/torture/pdf/psych_torture.pdf (last visited Dec.1, 2005); United Nations Press Release, United Nations Human Rights Experts Express Continued Concern About Situation of Guantanamo Bay Detainees (Feb. 4, 2005), available at http://www.unhchr.ch /huricane/huricane.nsf/0/F3AF690DC18BFFD6C1256F9E0034AC95?opendocument (last visited Nov. 29, 2005); International Committee of the Red Cross, Press Release, The ICRC's Work at Guantanamo Bay (Dec. 1, 2004); International Committee of the Red Cross, Operational Update, US Detention Related to the Events of September 11, 2001 and Its Aftermath—the Role of the ICRC (July 26, 2004), available at http://www.icrc.org/Web/Eng/ siteeng0.nsf/iwpList454/541ACF6DC88315C4C125700B004FF643 (last visited Dec. 1, 2005); Amnesty International, United States of America Dignity Denied: Torture and Accountability in the "War on Terror", at 22 (Oct. 27, 2004), available at http://www.icrc.org/Web/Eng/siteeng0. nsf/iwpList454/541ACF6DC88315C4C125700B004FF643 (last visited Dec. 1, 2005); see also Barry C. Scheck, From the President: Abuse of Detainees at Guantanamo Bay, The Nat'l Assoc. of Criminal Def. Lawyers Champion, Nov. 2004, at 4-5, available at http://www.nacdl.org/ public.nsf/01c1e7698280d20385256d0b00789923/01a2426440d05a4285256f6a00558f34?Open Document (last visited Dec. 1, 2005).

interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror—are actual interrogation techniques that the most senior Department of Defense lawyer has approved for use at Guantánamo Bay. See "Action Memo" from William J. Haynes II, General Counsel, Department of Defense, to Secretary of Defense (Nov. 27, 2002), available at http://www.defenselink.mil/news/Jun2004/d20040622doc5.pdf (last visited Dec. 1, 2005); Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations (Mar. 6, 2003), available at http://www.cdi.org/news/law/pentagon-torture-memo.pdf (last visited Dec. 1, 2005).

       31.    Approved interrogation techniques appear to have resulted in the death of detainees in Respondents' custody in Iraq, and in abuse of detainees at Bagram Air Force Base. See Tim Golden, In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths, N.Y. Times, May 20, 2005; Iraqi Died While Hung from Wrists, Assoc. Press, Feb. 17, 2005, available at http://www.washingtonpost.com/wp-dyn/articles/A32914-2005Feb17_2.html (last visited Dec. 1, 2005); Suzanne Goldenberg & James Meek, Papers Reveal Bagram Abuse, The Guardian, Feb. 18, 2005, available at http://www.guardian.co.uk/afghanistan/story/0,1284,1417396,00.html (last visited Dec. 1, 2005).

       32.    Some military lawyers have objected to and tried to stop the abusive interrogations at Guantánamo Bay. James Gordon Meek, At War With GITMO Grilling: Military Counsel Fought But Lost, N.Y. Daily News, Feb. 13, 2005, at 20 ("Judge Advocates—uniformed legal advisers known as JAGs who were assigned to a secret war crimes task force—repeatedly objected to aggressive interrogations by a separate intelligence unit at Camp Delta, where Taliban and Al Qaeda suspects have been jailed since January 2002. . . . . The military lawyers' actions had never been disclosed and are the first known cases of lower-level officers resisting interrogations at the Cuban camp that might constitute torture.").

       33.    Upon information and belief, Respondents contend that Petitioner should not be

informed of his rights under the laws or Constitution of the United States, the regulations of the

United States military, the Geneva Conventions and Protocols, supra, the International Covenant

on Civil and Political Rights, supra, the American Declaration on the Rights and Duties of Man,

supra, and the 1954 Convention Relating to the Status of Refugees, supra, or customary

international law.  Upon information and belief, Petitioner thus lacks awareness of his rights

under domestic and international law.

34.    The International Committee of the Red Cross ("ICRC") has charged the United

States military with intentionally using psychological and physical coercion on prisoners at

Guantánamo Bay during interrogations that were "tantamount to torture."  See Neil A. Lewis,

Red Cross Finds Detainee Abuse in Guantanamo, N.Y. Times, Dec. 1, 2004, at Al.  The report

includes claims that doctors and other medical workers at Guantánamo Bay participated in

planning interrogations.  Id.; see also M. Gregg Bloche & Jonathan H. Marks, When Doctors Go

to War, N.E. J. Med., Jan. 6, 2005, at 3-4.  Since details of the ICRC's report emerged, new

revelations of abuse and torture at Guantánamo Bay have appeared, including Federal Bureau of

Investigation memos detailing torture and "highly aggressive interrogation techniques,"

including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation,

and loud music.[2]  The Associated Press has reported allegations that female interrogators at

---

[2] See, e.g., Carol D. Leonnig, Guantanamo Detainee Says Beating Injured Spine:  Now in Wheelchair Egyptian-Born Teacher Objects to Plan to Send Him to Native Land, Wash. Post, Aug. 13, 2005, at A18, available at http://www.washingtonpost.com/wp-dyn/ content/article/2005/08/12/AR2005081201624.html?nav=rss_world (last visited Dec. 1, 2005); Guantánamo and Beyond, supra, at 83-115, Ch. 12-13; Guantánamo: An Icon of Lawlessness, Amnesty International, at 3-5 (Jan. 6, 2005), available at http://web.amnesty.org/library/Index/ ENGAMR510022005 (last visited Dec. 1, 2005); see also Neil A. Lewis, Fresh Details Emerge on Harsh Methods at Guantánamo, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, Further Detainee Abuse Alleged:  Guantanamo Prison Cited in FBI Memos, Wash. Post, Dec. 26, 2004, at A1, available at http://www.washingtonpost.com/wp-dyn/articles/A25962-2004 Dec25.html (last visited Dec. 1, 2005); Neil A. Lewis and David Johnston, New F.B.I. Memos Describe Abuses of Iraq Inmates, N.Y. Times, Dec. 21, 2004, at A1, Dan Eggen and R. Jeffrey Smith, FBI Agents Allege Abuse of Detainees of Guantanamo Bay, Wash. Post, Dec. 21, 2004, at A1, available at http://www.washingtonpost.com/wp-dyn/articles/A14936-2004

Guantánamo Bay have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to "break" Muslim detainees.  <u>Gitmo Soldier Details Sexual Tactics</u>, Assoc. Press, Jan. 27, 2005, <u>available at</u> http://www.washingtonpost.com/wp-dyn/articles/ A41749-2005Jan27_3.html (last visited Dec. 1, 2005); <u>see also</u> Eric Saar & Viveca Novak, <u>Inside the Wire: A Military Intelligence Soldier's Eyewitness Account of Life at Guantanamo</u> (Penguin Press 2005); <u>Guantánamo and Beyond</u>, <u>supra</u>, at 89-90, Ch. 12.

35.    In fact, some of the well-publicized and egregious interrogation techniques used in the Abu Ghraib torture incidents—such as aggressive use of dogs, sexual humiliation, stress positions, and sense deprivation—were pioneered at Guantánamo Bay.  <u>See</u> Josh White, <u>Abu Ghraib Dog Tactics Came From Guantanamo:  Testimony Further Links Procedures at 2 Facilities</u>, Wash. Post<i>,</i> July 27, 2005, at A14, <u>available at</u> http://www.washingtonpost.com/ wp-dyn/content/article/2005/07/26/AR2005072601792.html (last visited Dec. 1, 2005); and Josh White, <u>Abu Ghraib Tactics Were First Used at Guantanamo</u>, Wash. Post, July 14, 2005 at A1, <u>available at</u> http://www.washingtonpost.com/wp-dyn/content/article/2005/07/13 /AR2005071302380.html (last visited Dec. 1, 2005).

36.    The unlawful interrogation techniques used by Respondents at Guantanamo include not only direct physical and psychological abuse but also impermissible conduct intended to undermine the detainees' due process rights, such as representing to detainees that government agents are their attorneys for habeas corpus proceedings for the express purpose of extracting information from the detainees.  <u>See</u> Sam Hannel, <u>Lawyers Describe Guantanamo Detainees</u>, Seattle Post-Intelligencer, January 19, 2005;  <u>See</u> Toni Locy, <u>Lawyers:  Detainees' Cases Stalled in the Legal System</u>, USA Today, Jan. 26, 2005, <u>available at</u> http://www.usatoday.com/news/washington/

Dec20.html; Neil A. Lewis, <u>F.B.I. Memos Criticized Practices at Guantanamo</u>, N.Y. Times<i>,</i> Dec. 7, 2004, at A19.

2005-06-26-detainees-court_x.htm (last visited Dec. 3, 2005). Furthermore, Respondents have

instructed military defense lawyers to materially limit their representation of detainee clients in a

manner disfavorable to the clients, a practice that violates due process. See David Johnston &

Neil Lewis, Lawyer Says Military Tried To Coerce Detainee's Plea, N.Y. Times, June 16, 2005

at A25 (Late Ed.).

37.    Respondents, acting individually or through their agents, have stated that the

limitations that apply to coercive interrogation techniques used by United States military

officials under the auspices of the Department of Defense do not apply to interrogations

conducted by agents of the Central Intelligence Agency or other entities controlled by President

Bush. See, e.g., Guantánamo and Beyond, supra at 27-43, Ch. 5. Eric Lichtblau, Gonzales Says

'02 Policy on Detainees Doesn't Bind C.I.A., N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen and

Charles Babington, Torture by U.S. Personnel Illegal, Gonzales Tells Senate, Wash. Post, Jan.

19, 2005, at A4, available at http://www.washingtonpost.com/wp-dyn/articles/A19264-2005

Jan18.html (last visited Dec. 1, 2005).

38.    In published statements, President Bush, Secretary Rumsfeld, and predecessors of

Hood and Bumgarner, respectively, Brigadier General Michael Lenhert and Colonel Terry

Carrico, have proclaimed that the United States may hold the detainees indefinitely under their

current conditions. See, e.g., Roland Watson, British Team to Question Cuba Detainees; War on

Terror, The Times (London), Jan. 18, 2002, at 4 ("Donald Rumsfeld, the US Defence Secretary,

suggested last night that al-Qaeda prisoners could be held indefinitely at the base. He said that

the detention of some would be open-ended as the United States tried to build a case against

them."); Lynne Sladky, More Scrutiny Over Suspects' Treatment, Assoc. Press, Jan. 22, 2002

("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the

temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work

in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison

'exactly in accordance with federal prison standards . . . .'"), available at http://www.seacoast

12

newspapers.com/2002news/1_22_w1.htm (last visited Dec. 1, 2005); John Mintz, Extended

Detention in Cuba Mulled, Wash. Post, Feb. 13, 2002, at A16 ("As the Bush Administration

nears completion of new rules for conducting military trials of foreign detainees, U.S. officials

say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a

terrorist penal colony for many years to come."), available at http://www.latinamericanstudies.

org/cuba/mulled.htm (last visited Dec. 1, 2005).

39.    According to the Department of Defense, even detainees who are adjudged

innocent of all charges by a military commission may nevertheless be kept in detention at

Guantánamo Bay indefinitely.  See Department of Defense Press Background Briefing of July 3,

2003, available at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last

visited Dec. 1, 2005).

40.    Counsel for Respondents have consistently maintained that the United States has

reserved the right to hold the detained prisoners, including Petitioner, under their current

conditions indefinitely.  See In re Guantanamo Detainee Cases, Nos. 02-CV-00299 (CKK) et al.,

(D.D.C.), Tr. of Dec. 1, 2004, Or. Argument on Mot. to Dismiss, at 22-24 (statements of

Principle Deputy Assoc. Atty. Gen. Brian Boyle); see also Dana Priest, Long-Term Plan Sought

for Terror Suspects, Wash. Post, Jan. 2, 2005, at Al, available at http://www.washington

post.com/wp-dyn/articles/A41475-2005Jan1.html (last visited Dec. 1, 2005).

41.    In fact, Respondents have failed to release detainees even *after* they have been

found to be non-enemy combatants by the Combatant Status Review Tribunals.[3]

---

[3] See Robin Wright, Chinese Detainees Are Men Without a Country;15 Muslims, Cleared
of Terrorism Charges, Remain at Guantanamo With Nowhere to Go, Wash. Post, August 24,
2005, at A1 (Final Ed.), available at http://www.washingtonpost.com/wp-dyn/
content/article/2005/08/23/AR2005082301362.html (last visited Dec. 1, 2005); Ben Fox, U.S. to
Ease Conditions for Some Detainees, Allow Phone Calls, Assoc. Press, Aug. 11, 2005, available
at http://www.freenewmexican.com/news/31136.html (last visited Dec. 1, 2005).

42.    Furthermore, the United States has acknowledged plans to begin constructing a new, more permanent facility at Guantánamo Bay.  Christopher Cooper, In Guantanamo, Prisoners Languish in a Sea of Red Tape, Wall St. J. (Eastern), Jan. 26, 2005, at Al; Paisley Dodds, Guantanamo Takes on Look of Permanency, Assoc. Press, Jan. 9, 2005, available at http://scoop.agonist.org/story/2005/1/9/14725/47647 (last visited Dec. 1, 2005).

### F.  Rendition

43.    During interrogations, detainees have also been threatened with "rendition," or transfer to countries that routinely practice torture.  Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by means of torture.  See Craig Whitlock, New Swedish Documents Illuminate CIA Action:  Probe Finds 'Rendition' Of Terror Suspects Illegal, Wash. Post, May 21, 2005, at A1, available at http://www.washingtonpost.com/wp-dyn /content/article/2005/05/20/AR2005052001605.html (last visited Dec. 1, 2005); Jane Mayer, Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, The New Yorker, Feb. 14, 2005, at 106, available at http://www.newyorker.com/fact/content/ ?050214fa_fact6 (last visited Dec. 1, 2005).

44.    Various major American and international news organizations have documented the United States' practice of rendition, including, among others, The New York Times, Washington Post, Los Angeles Times, and British Broadcasting Corporation ("BBC"). According to news accounts:

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics—including torture and threats to families—that are illegal in the United States, the sources said.  In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

14

Rajiv Chandrasekaran & Peter Finn, U.S. Behind Secret Transfer of Terror Suspects, Wash. Post, Mar. 11, 2002, at A1, available at http://www.infowars.com/saved%20pages/ Police_state/torture_wapost.htm (last visited Dec. 1, 2005); see also Dana Priest, Long Term Plan Sought for Terror Suspects, Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers."), available at http://www.washingtonpost. com/wp-dyn/articles/A41475-2005Jan1.html (last visited Dec. 1, 2005).

45.     In fact, the United States Government has recently announced its intention to render many Guantánamo Bay detainees to countries that have a poor record of respecting human rights, and which engage in torture.[4]  Furthermore, upon information and belief, the government is conditioning such rendering of detainees to their home countries on the requirement that the home country imprison the detainee, without regard to the detainee's individual factual or legal situation.[5]

46.     Moreover, the Washington Post reports that it has confirmed that the Central Intelligence Agency is holding prisoners in secret prisons in Eastern Europe, referred to as "black sites" in United States government documentation.  In these facilities, which "were built

---

[4] See, e.g., Matthew Waxman, Beyond Guantanamo, Wash. Times Aug. 20, 2005, at A17, available at http://www.washingtonpost.com/wp-dyn/content/article/2005/08/19/ AR2005081901461.html (last visited Dec. 3, 2005); Robin Wright & Josh White, U.S. Holding Talks on Return of Detainees:  Administration Close to Reaching Agreements With 10 Muslim Governments, Wash. Post, Aug. 9, 2005, at A13; Neil Lewis, available at http://www.washingtonpost.com/wp-dyn/content/article/2005/08/08/AR2005080801266.html (last visited Dec. 3, 2005), Guantánamo Detention Site Is Being Transformed, U.S. Says, N.Y. Times, Aug. 6, 2005, at A8 (Late Ed.); Paul Richter, U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay, L.A. Times, Aug. 5, 2005, at A18.

[5] See Wright & White, supra; BBC Worldwide Monitoring, USA to Release 107 Yemenis from Guantanamo Bay, Aug. 10, 2005 ("The US authorities declared few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.") (alterations in original).

and are maintained with congressionally appropriated funds," prisoners are "[k]ept in dark, sometimes underground cells, [and] have no legal rights, and no one outside the CIA is allowed to talk with or even see them."  Dana Priest, CIA Holds Terror Suspects in Secret Prisons:  Debate is Growing Within Agency About Legality and Morality of Overseas System Set Up After 9/11, Wash. Post, Nov. 2, 2005 at A1, available at http://www.washingtonpost.com /wp-dyn/content/article/2005/11/01/AR2005110101644.html (last visited Dec. 1, 2005).  The Washington Post also reports that some of these secretly held individuals have been at Guantánamo Bay.  Id.

47.    Upon information and belief, Petitioner is at risk of being rendered without lawful procedures to a country that engages in torture during interrogations and incarceration.  Specifically, Petitioner may be sent to Afghanistan or some other third country that permits indefinite detention without process and/or engages in torture or abuse during incarceration.

## IV.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION— UNLAWFUL DEPRIVATION OF LIBERTY

48.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

49.    By the actions described above, Respondents, acting under color of law, have violated, and continue to violate, common-law principles of due process, as well as the Due Process Clause of the Fifth Amendment to the United States Constitution.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals without due process of law, and the remaining Respondents have implemented those orders.  Respondents' actions deny Petitioner the process accorded to persons seized and detained by the United States armed forces

16

in times of armed conflict as established by, among other things, the Uniform Code of Military

Justice ("UCMJ"), <u>available</u> <u>at</u> http://www.constitution.org/mil/ucmj19970615.htm (last visited

Dec. 1, 2005), Army Regulation 190-8, Articles 3 and 5 of the Geneva Convention Relative to

the Treatment of Prisoners of War ("Third Geneva Convention"), Aug. 12, 1949, 6 U.S.T. 3316,

and the Geneva Convention Relative to the Protection of Civilian Persons in Times of War

("Fourth Geneva Convention"), Feb. 2, 1956, 6 U.S.T. 3516, and customary international law as

reflected, expressed, and defined in multilateral treaties and other international instruments,

international and domestic judicial decisions, and other authorities.

50.     To the extent that the Executive Order purports to authorize Petitioner's

detention, the Executive Order violates the Fifth Amendment of the United States Constitution

on its face and as applied to Petitioner.

51.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive

relief, as well as any other relief that this Court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION—
### UNLAWFUL CONDITIONS OF CONFINEMENT

52.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully

herein.

53.     By the actions described above, Respondents, acting under color of law, have

violated and continue to violate Petitioner's right to be free from unlawful conditions of

confinement, in violation of the Due Process Clause of the Fifth Amendment to the United States

Constitution.

54.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive

relief, as well as any other relief that this Court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### GENEVA CONVENTIONS—ARBITRARY DENIAL OF DUE PROCESS

55.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

56.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner the process accorded to persons seized and detained by the armed forces of the United States in times of armed conflict, as established by specific provisions of the Third and Fourth Geneva Conventions, supra.

57.    Violations of the Geneva Conventions are direct treaty violations, violate customary international law, and give rise to an enforceable claim by Petitioner under 28 U.S.C. § 2241(c)(3).

58.    Respondents are liable for the conduct described above, because they set the conditions at Guantánamo Bay, and directly or indirectly facilitated, ordered, acquiesced, confirmed, ratified, or conspired to violate the Third and Fourth Geneva Conventions, supra.

59.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## FOURTH CLAIM FOR RELIEF

### INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW— ARBITRARY DENIAL OF DUE PROCESS

60    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

61.    By the actions described above, Respondents have denied and continue to deny Petitioner the process due to persons seized and detained by the United States armed forces in times of armed conflict, as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international

18

instruments, international and domestic judicial decisions, and other authorities.

62.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## FIFTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE—TORTURE

63.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

64.    Upon information and belief, Respondents directed, ordered, confirmed, ratified, or conspired together, and with others, to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon detainees, in order to obtain coerced information or confessions from detainees, to punish or intimidate detainees, or for other purposes.  Upon information and belief, such abuses include, among other things, placing detainees in constant vulnerability to repeated interrogation and severe beatings; keeping detainees in cages with no privacy; shackling detainees with heavy chains and irons; subjecting detainees to solitary confinement or the threat of solitary confinement for prolonged periods of time for minor rule infractions; interrogating detainees while shackled and chained in painful positions; exposing detainees to extremes of temperature; subjecting detainees to violent behavior or the threat of violence; threatening detainees with rendition to countries that practice torture; sexually humiliating detainees; denying detainees access to counsel and family; depriving detainees of adequate medical care; and subjecting detainees to repeated psychological abuse.

65.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

66.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, or conspired together, and with others, to commit the acts of torture against detainees.

67.     Upon information and belief, Petitioner was, and continues to be, subject to the same physically and psychologically abusive conditions as other detainees, and is entitled to habeas corpus, declaratory, and injunctive relief and other relief that this Court may deem appropriate.

**SIXTH CLAIM FOR RELIEF**

**ALIEN TORT STATUTE—WAR CRIMES**

68.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

69.     By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, or conspiring to bring about the torture and other inhumane treatment of detainees constitute war crimes or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate, among other things, the Fourth Geneva Convention, supra, Common Article III of the Geneva Conventions, Aug. 12, 1949, 6 U.S.T. 3316, and Additional Protocols I and II to the Geneva Conventions of August 12, 1949 ("Protocols I and II"), reprinted in, 16 Int'l.Leg.Mats. 1391, 1442 (1977), as well as customary international law prohibiting war crimes as reflected, expressed, and defined in multilateral treaties and international instruments, international and domestic judicial decisions, and other authorities.

70.     As a result of Respondents' unlawful conduct, upon information and belief, detainees have been and are being forced to suffer severe physical and psychological abuse and agony.  Furthermore, upon information and belief, Petitioner was, and continues to be, subject to the same conditions as other detainees, and therefore is entitled to habeas corpus, declaratory, and injunctive relief, and such other relief that this Court may deem appropriate.

20

## SEVENTH CLAIM FOR RELIEF

## ALIEN TORT STATUTE—CRUEL, INHUMAN OR DEGRADING TREATMENT

71.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

72.     Upon information and belief, Respondents' acts described herein intentionally and grossly humiliated and debased detainees, forced detainees to act against their respective wills and consciences, filled detainees with fear and anguish, and broke detainees physically, psychologically, or morally.

73.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

74.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, or conspired together, and with others, to cause the cruel, inhuman or degrading treatment of detainees.

75.     Upon information and belief, Petitioner was, and continues to be, subject to the same severe physical and psychological abuse and agony as other detainees, and is entitled to habeas corpus, declaratory, and injunctive relief, as well as other relief that this Court deems just.

## EIGHTH CLAIM FOR RELIEF

## ALIEN TORT STATUTE—
## ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION

76.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

77.     The acts described herein constitute arbitrary arrest and detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

78.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, or conspired together, and with, others to bring about the arbitrary arrest and prolonged arbitrary detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

79.     As a result of Respondents' unlawful conduct, detainees have been, and are being, deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Furthermore, upon information and belief, Petitioner is subject to the same conditions as other detainees, and is therefore entitled to habeas corpus, declaratory, and injunctive relief, and such other relief that this Court may deem appropriate.

## NINTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE—ENFORCED DISAPPEARANCE

80.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

81.     By the actions described above, Respondents directed, ordered, confirmed, ratified, or conspired to bring about the enforced disappearance of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that Respondents' actions violate customary international law prohibiting enforced disappearances as reflected, expressed,

and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

82.     As a result of Respondents' unlawful conduct, detainees have been, and are being, deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Upon information and belief, Petitioner is subject to the same conditions as other detainees, and therefore is entitled to habeas corpus, declaratory, and injunctive relief, and such other relief that this Court may deem appropriate.

**TENTH CLAIM FOR RELIEF**

**ARTICLE II OF THE UNITED STATES CONSTITUTION—
UNLAWFUL DETENTION**

83.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

84.     The United States has not shown that Petitioner is, or was, an enemy alien, a lawful or unlawful belligerent, or a combatant of any kind.  The executive branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory, or civilians who were not "carrying a weapon against American troops on a foreign battlefield."  Hamdi, 124 S. Ct. at 2642 n.l.

85.     By the actions described above, President Bush has exceeded and continues to exceed the executive's authority under Article II of the United States Constitution by authorizing, ordering, and directing that military officials seize detainees and transfer them to military detention, and by authorizing and ordering the continued military detention of detainees at Guantánamo Bay.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, or supervising the seizure and military detention of detainees.

86.     President Bush's Executive Order authorizing the military seizure and detention of detainees by the Respondents is ultra vires and illegal, because it exceeds the executive's

authority under Article II of the United States Constitution.  Accordingly, the Executive Order is void on its face, and as applied to Petitioner.

87.    To the extent that Respondents assert that their authority to detain Petitioner derives from a source other than the Executive Order, including, without limitation, the executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the United States Armed Forces, whether from Article II of the United States Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

88.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief that this Court may deem appropriate.

**ELEVENTH CLAIM FOR RELIEF**

**APA—ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION**

89.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

90.    The UCMJ governs the detention of persons by the United States armed forces. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory, or who were not engaged in combat against the United States.  See Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

91.    By arbitrarily and capriciously detaining Petitioner in military custody, Respondents have acted and continue to act ultra vires and unlawfully in violation of Army Reg. 190-8 and the UCMJ.

92.    Respondents' violation of Army Regulation 190-8 and the UCMJ gives rise to a cause of action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*.

93.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

### APA—ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS

94.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

95.     By the actions described above, Respondents, acting under color of law, have violated the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*, by arbitrarily and capriciously denying Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the UCMJ and Army Regulation 190-8.

96.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court many deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF

### APA—TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT

97.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

98.     By the actions described above, Respondents have violated the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*, by acting and continuing to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, or conspiring to unlawfully subject detainees to torture or cruel, inhuman or degrading treatment in violation of the UCMJ and Army Regulation 190-8.  Upon information and belief, Petitioner is subject to the same conditions as other detainees.

99.     Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief that this Court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION—UNLAWFUL RENDITION

100.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

102.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief that this Court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF

### CONVENTION AGAINST TORTURE, CONVENTION RELATING TO THE STATUS OF REFUGEES AND GENEVA CONVENTIONS —UNLAWFUL RENDITION

103.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of his rights under the Third and Fourth Geneva Conventions, supra, the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("Convention Against Torture"), Dec. 10, 1984, G.A.Res. 46, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984), and the 1954 Convention Relating to the Status of Refugees, supra.

105.    Accordingly, Petitioner is entitled to habeas corpus, declaratory and injunctive relief, as well as any other relief that this Court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE—UNLAWFUL RENDITION

106.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

107.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under 28 U.S.C. §§ 2241 and 2242, and under customary international law.  Petitioner is entitled to vindicate these rights under the Alien Tort Statute, 28 U.S.C. § 1350.

108.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

### VIOLATION OF THE RIGHT TO COUNSEL AND ACCESS TO THE COURTS

109.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

110.    Respondents consistently have contrived to intrude upon detained Petitioners' right to consult with counsel by conditioning counsel's access to detainees on unreasonable terms, including classification/declassification procedures, in violation of Petitioner's attorney-client privilege, work product privilege, right to counsel, and right to due process.

111.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief and requests that this Court:

1. Grant the Writ of Habeas Corpus and order Respondents to release Petitioner Khan from his current unlawful detention;

2. Order that Petitioner be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights;

3. Order that Petitioner cannot be transferred to any other country without the specific, written agreement of Petitioner and Petitioner's counsel counsel while this action is pending;

4. Order that Petitioner cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

5. Order Respondents to allow counsel to meet and confer with Petitioner Khan in private, and to engage in unmonitored attorney-client conversations;

6. Order Respondents to cease all interrogations of Petitioner Khan, direct or indirect, while this litigation is pending;

7. Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Khan;

8. Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. §702, the treaties of the United States and customary international law;

9. Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Khan without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of the common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

10. Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law and international law.

Dated:  December 12, 2005.

Respectfully submitted,

/s/ Shereen Joy Charlick
/s/ Stephen D. Demik
Shereen Joy Charlick (Cal Bar No. 147533)
Stephen D. Demik (Cal. Bar No. 221167)
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900

San Diego, California 92101-5008
Telephone: (619) 234-8467

Counsel for Petitioner

## CERTIFICATE OF SERVICE

I, Pamela D. Bishop, certify that I today caused a true and accurate copy of the foregoing to be served upon the following persons, by first-class United States mail, in addition to the service that automatically occurs by virtue of my electronic filing of this document:

> The Honorable Alberto Gonzales
> United States Attorney General
> United States Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C.  20530-0001
>
> The Honorable Kenneth L. Wainstein
> United States Attorney for the District of Columbia
> 555 4th Street, N.W.
> Washington, D.C.  20530
>
> Terry Marcus Henry, Esq., Senior Trial Attorney
> U.S. Department of Justice
> P.O. Box 883
> 20 Massachusetts Ave., NW, Suite 7144
> Washington, DC 20044

This 12th day of December, 2005.


_____/s/ Pamela Bishop_____
Pamela Bishop